UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Denise Kello_

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_Cleary Gottlieb Steen + Hamilton, LLP_

*(In the space above enter the full name(s) of the defendant(s).*
*If you cannot fit the names of all of the defendants in the space*
*provided, please write "see attached" in the space above and*
*attach an additional sheet of paper with the full list of names.*
*Typically, the company or organization named in your charge*
*to the Equal Employment Opportunity Commission should be*
*named as a defendant.  Addresses should not be included here.)*

# 16 CV 2982

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☐ Yes  ☒ No
*(check one)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

_____    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

✓    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
*NOTE:  In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

✓    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

✓    New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

✓    New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

*Rev. 05/2010*                                1

## I.     Parties in this complaint:

A.     List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff      Name _Denise Kello_
               Street Address _2775 SW 89th Pl_
               County, City _Marion, Ocala_
               State & Zip Code _FL 34476_
               Telephone Number _516 547-7167_

B.     List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant      Name _Cleary Gottlieb Steen & Hamilton, LLP_
               Street Address _One Liberty Plaza_
               County, City _New York County, New York_
               State & Zip Code _NY 10006_
               Telephone Number _212 225 2000_

C.     The address at which I sought employment or was employed by the defendant(s) is:

               Employer _Cleary Gottlieb Steen & Hamilton, LLP_
               Street Address _One Liberty Plaza_
               County, City _New York County, New York_
               State & Zip Code _NY 10006_
               Telephone Number _212 225 2000_

## II.     Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

               _____          Failure to hire me.

               ✓                 Termination of my employment.

               _____          Failure to promote me.

               _____          Failure to accommodate my disability.

               _____          Unequal terms and conditions of my employment.

*Rev. 05/2010*                                2

Retaliation.

✓ Other acts *(specify):* Disability + Age Discrimination

**Note:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.  It is my best recollection that the alleged discriminatory acts occurred on: 5/6/14 .
*Date(s)*

C.  I believe that defendant(s) *(check one):*

_____  is still committing these acts against me.

✓  is not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check only those that apply and explain):*

☐  race _____    ☐  color _____

☐  gender/sex _____    ☐  religion _____

☐  national origin _____

☑  age.  My date of birth is 8/4/53 *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☑  disability or perceived disability, 2 herniated discs w (specify) nerve root compression lumbar spine, cervical spine

E.  The facts of my case are as follow *(attach additional sheets as necessary):* pain causing numbness, tingling + paralysis in arms

On 4/4/14, while on a scheduled vacation, I took a terrible fall + seriously injured my lumbar + cervical spine. Because of my termination on 5/6/14, I was unable to receive proper medical care and am now permanently disabled. Attached are documents that support my disability + age discrimination claim and Cleary's hostile, unwarranted response to my disability.

**Note:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

**III.  Exhaustion of Federal Administrative Remedies:**

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: 2/13/15 filed intent to file charge *(Date).* 2/19/15 formal charge filed (attached)

*Rev. 05/2010*

3

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue letter.

____✓____    issued a Notice of Right to Sue letter, which I received on ___1/22/16___ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

____✓____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: 6 months disability income $39,350 (78,700/2) pain and suffering $10,000, and all attorney fees and court costs

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 17th day of April, 2016

Signature of Plaintiff    Denese Kilts

Address    2775 SW 89u Pl
Ocala, FL 34476

Telephone Number    516-547-7167

Fax Number *(if you have one)* _____

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:   **Denise Kello**
      **2775 Sw 89th Pl**
      **Ocala, FL 34476**

From:   **New York District Office**
        **33 Whitehall Street**
        **5th Floor**
        **New York, NY 10004**

☐   *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2015-01504** | **Esther  Gutierrez,**<br>**Investigator** | **(212) 336-3756** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

1/11/2016
*(Date Mailed)*

Enclosures(s)

cc:    **Attn**
       **Director of Human Resources**
       **CLEARY, GOTTLIEB, STEEN & HAMILTON**
       **One Liberty Plaza**
       **New York, NY 10006**

       **David M. Wirtz**
       **Littler Mendelson, PC**
       **900 Third Avenue**
       **New York, NY  10022-3298**

**Denise Kello**
**2775 SW 89 th Pl**
**Ocala, FL 34476**
**(516) 547-7167**

Rudolph White
United States EEOC
33 Whitehall Street, 4th Floor
New York, NY 10004

RE:    Charge No. 520-2015-01504
        Denise Kello  v. Cleary Gottlieb Steen & Hamilton

Dear Mr. White:

Below is my rebuttal to the position statement submitted by the Respondent.

### EEOC Charge Filing

On February 13, 2015, I contacted EEOC to get information about filing a charge against my former employer, Cleary Gottlieb Steen & Hamilton ("Cleary"). I spoke with Alex and he advised me that the 300 day limit was March 2, 2015 and that I should fax a letter to the EEOC field office describing the situation and of my intent to file a formal charge. I faxed this information to the EEOC on February 13, 2015, which is within the 300 day limit. Please see Exhibit A.

I spoke with Richard LeClear on February 16, 2015 and he advised me to go to the EEOC website, print the Intake Questionnaire, fill it out and fax it back to his attention. I completed this on February 19, 2015, also within the 300 day limit. Intake Questionnaire and fax receipts are Exhibit B.

### Cleary

While Cleary is a distinguished firm in the legal community, the corporate culture for the administrative staff has changed drastically during the ten plus years of my employment. In the beginning, partners, associates and administrative staff all seemed to work well together as a team. But now, with the firm downsizing, they are looking to dismiss higher paid, older employees and my disability gave them that opportunity. Therefore, I firmly believe I was terminated not for job abandonment, but for age and disability discrimination. Please see Exhibits C1-C4, articles and blogs that support this claim.

### Disability

This problem began on April, 4, 2014, when I took a terrible fall and suffered a serious, traumatic injury to my upper and lower back. Attached in Exhibit D are the results of my MRI's, x-rays, an excerpt from the social security disability website confirming that my back problems are a disabling condition , the disability form I submitted to Cleary and a description of diagnosis code 724.4, which is what my current

pain management doctor is using to describe my condition. There is NO way I could commute to work via the LIRR and subway with the pain I was experiencing. This is a REAL disability.

I would like to distinguish the difference between this disability and my previous disabilities (their Exhibits I and J). On my previous disabilities in 2008 and 2011, the doctors filling out the disability forms were the doctors actually treating me for the disability. In this disability case, the doctor WAS NOT going to be my treating doctor and therefore it would have been unrealistic and highly unethical for him to set a return to work date. After reviewing my MRI and x-ray results, this doctor said there was nothing he could do for me and referred me to a pain management doctor. Unfortunately, being terminated would leave me with no medical insurance and therefore I was unable to pursue proper treatment and because of my age, my condition has deteriorated. COBRA was just too expensive and not an option. More on this in the chronology below.

### Chronology

Please refer to Exhibit E1. In lieu of the way Cleary was terminating people, I decided to keep a detailed chronology of my own. I was sensing a hostile environment. Please also refer to Exhibit E2, my phone records for the period in question, and Exhibit E3, copies of email correspondence for the period in question.

They allege that they could not deliver the disability paperwork via FedEx or UPS to the address they had on file, or to my temporary address. Based on my 4/21/14 conversation with Karen, my supervisor, I sent her an email at 11:16 AM with my temporary address. On 4/23/14 Gabriella alleges via email at 10:39 AM that the package was returned. I find it hard to believe that by 10:39 AM, considering the way the mail is processed, that this package was already returned and in her hands. When I asked her how the disability papers were sent, she paused, never answered me and changed the subject. I am very skeptical that the disability papers were ever sent to my temporary address. How is it that my termination papers, my 2014 W-2 and my 2014 401K statement ALL reached my temporary address without a problem?

They also allege that I was unresponsive and uncooperative. I believe this statement to be a fabrication of the facts and the beginning of them setting me up for termination. Please review my chronology and my telephone records. I believe I made every effort to let them know my status of when I was having tests, when I had doctors appointments and what the results of my tests indicated. Although they allege that Gabriella left me 3 unanswered voicemails, please look at my phone records from 4/21/14 through 4/23/14, there are NO incoming calls from Cleary (It would show up as 212-225-2000). I found the 4/23/14 email to be very confrontational and hostile.

Again, they allege that on May 5, 2014 and on May 6, 2014, that Gabriella left voicemail messages and again, I refer you to my phone records which show NO incoming calls from Cleary.

Referring to my chronology and to my phone records, you will see that on 5/6/14 I spoke with Danielle Ricca at 11:20 AM and left a voicemail message for Gabriella Vavrasek at 11:29 AM indicating that they would have my paperwork by Friday. Twenty minutes later I received my termination email.

I did not ignore Ms. Ricca's instructions for a return to work date, but as I stated above, I believe this would have been unrealistic and highly unethical for this doctor, who was NOT going to be my treating doctor, to include such information. I am sure this doctor has filled out disability papers many times before and knows what information he can and cannot legally provide. I am sure that once I had seen a pain management doctor the return to work date would have been resolved, but I was terminated before I could get the proper treatment.

Please refer to the May 13, 2014 email I received from Gabriella. At this point I felt we were going around in circles – I already emailed them my address on April 21, 2014, they had my cell phone number and my husband's cell phone number and I had no other numbers to provide and because of their downsizing efforts and my high salary my chances for reinstatement would be extremely low, as I have never seen this happen before. My total salary (base pay and 2 week bonus) was $81,727 and for that kind of money they could hire 2 or more junior secretaries to take my place. There were also no guarantees that I would get reinstated if I provided a return to work date through a pain management doctor and both injections and physical therapy require multiple visits and I would not be able to afford such payments without medical insurance. My disability, my age and my salary were all contributing factors to my termination. I did not abandon my job, my firm abandoned me.

**Performance**

I have been a stellar performer in the workplace for over 40 years. I have always maintained a high standard of professionalism and was always well respected by my peers and colleagues. In my ten and half years with Cleary, I provided the highest level of support to all the attorneys I worked for and was always a dedicated and loyal team player for the firm. Exhibit F includes some of the accolades I have received from a Cleary partner, attorneys I supported over the years and even a former employer. There were many more, but they remained in my desk and I am sure Cleary threw them out when they cleaned out my desk. My reviews were always excellent, but I cannot provide you with this information because we were never allowed to see or get a copy of what the attorneys wrote about us – the supervisor would read excerpts of their choosing at our reviews. I was also told by my supervisor that I may not get a raise the following year because I was at the top end of the pay scale. I have NEVER in my career been referred to as unresponsive and uncooperative, but have always been an excellent team player with outstanding skills. If necessary, I could get in touch with some former attorneys and former employers to confirm my level of achievement and competence.

**Summary**

In response to their claim that I did not file my charge in a timely manner, I believe I have proven through Exhibits A and B that my claim was filed timely.

In response to their claim that they did not discriminate against me because of my disability, I believe that Exhibit D proves that I do have a seriously disabling condition as recognized by social security and my current pain management doctor, I was extremely qualified for the position (Exhibit F), suffered an adverse action through termination (Exhibit E3, May 6, 2014 email) and industry articles (Exhibits C1-C4)

which prove that Cleary is downsizing and fabricating reasons to terminate older, disabled and higher paid employees and that Exhibits E1-E3 prove that I was not unresponsive and uncooperative.

In response to their claim that they did not discriminate against me because of my age, I believe that I am in a protected class, extremely qualified for this position (Exhibit F), suffered an adverse action through termination (Exhibit E3, May 6, 2014 email) and industry articles (Exhibits C1-C4) which prove that Cleary is downsizing and fabricating reasons to terminate older, disabled and higher paid employees and that Exhibits E1-E3 prove that I was not unresponsive and uncooperative.

Mr. White, I hope I have provided you with the all the information you need.  If you have any questions or need any additional information, please contact me via phone at 516-547-7167 or via email at denisekello@hotmail.com.  Thank you for your assistance regarding this matter.


Sincerely,

Denise Kello
2775 SW 89 th Pl
Ocala, FL  34476

Exhibit A

| | |
|---|---|
| **Date of Termination** | 5/6/2014 |
| **Add 300 Days** | 300 |
| **Last Date to File Complaint** | 3/2/2015 |

My initial contact wirh the EEOC was on 2/13/15, clearly
within the 300 day limit.  Letter faxed to EEOC
stating intent to file a charge and fax receipt attached.

Exhibit A

February 13, 2015


To:     NY District Office
        33 Whitehall Street, 5th Floor
        New York, NY  10004
        Fax:  (212) 336-3790

From:   Denise Kello
        2775 SW 89th Place
        Ocala, FL  34476
        DOB:  8/4/1953
        Phone:  (516) 547-7167

I want to file a charge of age, wage and disability discrimination against my former employer:

        Cleary Gottlieb Steen and Hamilton, LLP
        One Liberty Plaza
        New York, NY  10006
        Phone:  (212) 225-2000

I was terminated on May 6, 2014 for job abandonment.

On April 4, 2014, I took a terrible fall and seriously injured my back.  I have the xray and MRI test results that prove I have 2 herniated discs in my lower back with nerve root compression.  My doctors now have advised me to apply for social security disability as my condition has worsened.  I have a detailed chronology of the events from April 4 through May 6, as well as phone records, test results and emails.  I feel I was a victim of age discrimination (61 years old), wage discrimination (I was one of the higher paid secretaries) and disability discrimination.

I look forward to discussing this with you in greater detail.

Sincerely,

*Denise Kello*

Denise Kello

```
            TRANSMISSION VERIFICATION REPORT

                                        TIME  : 02/13/2015 19:11
                                        NAME  :
                                        FAX   :
                                        TEL   :
                                        SER.# : BROH2J392885


    DATE,TIME            02/13  19:10
    FAX NO./NAME         12123363790
    DURATION            00:00:50
    PAGE(S)             01
    RESULT             OK
    MODE               STANDARD
                       ECM
```

February 13, 2015


To:     NY District Office
        33 Whitehall Street, 5th Floor
        New York, NY  10004
        Fax: (212) 336-3790

From:   Denise Kello
        2775 SW 89th Place
        Ocala, FL  34476
        DOB: 8/4/1953
        Phone: (516) 547-7167

I want to file a charge of age, wage and disability discrimination against my former employer:

        Cleary Gottlieb Steen and Hamilton, LLP
        One Liberty Plaza
        New York, NY  10006
        Phone: (212) 225-2000

I was terminated on May 6, 2014 for job abandonment.

On April 4, 2014, I took a terrible fall and seriously injured my back. I have the xray and MRI test results that prove I have 2 herniated discs in my lower back with nerve root compression. My doctors now have advised me to apply for social security disability as my condition has worsened. I have a detailed chronology of the events from April 4 through May 6, as well as phone records, test results and emails. I feel I was a victim of age discrimination (61 years old), wage discrimination (I was one of the higher paid

# Office DEPOT
# OfficeMax

OFFICE DEPOT STORE# 306
9474 U.S. Highway 19
Port Richey, FL 34668
(727) 841-8400
02/13/2015    14.5.3        6:12 PM
STR 306  REG4    TRN  6290 EMP 727032
-----------------------------------------

SALE
Product ID      Description        Total
833071   FAXSENDL&TF              1.49 SS

            Subtotal:            1.49
Sales Tax:                       0.04
FL State Telecom Tax  9.17%      0.14
            Total:               1.67
            Cash:                5.00
            CHANGE              (3.33)
*************************************************

Shop online at www.officedepot.com

*************************************************
WE WANT TO HEAR FROM YOU!

Participate in our online customer survey
and receive a coupon for **$10 off your**
**next qualifying purchase of $50 or more** on
office supplies, furniture and more.
(Excludes Technology. Limit 1 coupon per
**household/business.**)

Visit **www.officedepot.com/feedback**
and enter the survey code below.

Survey Code:
A48T CEGO XAJQ
*************************************************

22VT9AAPMU345BM88

Now one company. Now great savings.
Office Depot, Inc., including its
subsidiary OfficeMax Incorporated

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. **Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)**

## 1. Personal Information

Last Name: Kello    First Name: Denise    MI: _____

Street or Mailing Address: 2775 SW 89th Pl    Apt or Unit #: _____

City: Ocala    County: Manion    State: FL    Zip: 34476

Phone Numbers: Home: ( ) N/A    Work: ( ) N/A

Cell: (516) 547-7167    Email Address: denisekello@hotmail.com

Date of Birth: 5/4/53    Sex: ☐ Male ☒ Female    Do You Have a Disability? ☒ Yes ☐ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native ☐ Asian ☒ White ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? Italy + Germany

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Victor Kello    Relationship: Spouse

Address: 2775 SW 89th Pl    City: Ocala    State: FL    Zip Code: 34476

Home Phone: ( ) N/A    Other Phone: (727) 846-3240

## 2. I believe that I was discriminated against by the following organization(s): (Check those that apply)

☒ Employer    ☐ Union    ☐ Employment Agency    ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Cleary, Gottlieb, Steen + Hamilton, LLP

Address: One Liberty Plaza    County: New York

City: New York    State: NY Zip: 10006    Phone: (212) 225-2000

Type of Business: Law Firm    Job Location if different from Org. Address: N/A

Human Resources Director or Owner Name: Danielle Coppola    Phone: (212) 225-3140

**Number of Employees in the Organization at All Locations: Please Check (✓) One**

☐ Fewer Than 15    ☐ 15 – 100    ☐ 101 – 200    ☐ 201 – 500    ☒ More than 500

## 3. Your Employment Data (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☐ No

Date Hired: 9/29/03    Job Title At Hire: Legal Secretary

Pay Rate When Hired: $55,000/yr    Last or Current Pay Rate: $79,780

Job Title at Time of Alleged Discrimination: Legal Secretary    Date Quit/Discharged: 5/6/14

Name and Title of Immediate Supervisor:

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☐ Sex ☒ Age ☒ Disability ☐ National Origin ☐ Religion ☐ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify:_____

If you checked genetic information, how did the employer obtain the genetic information?_____

_____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: ___5/6/14___ Action: Terminated for job abandonment, even though they knew I had a serious back injury which has now left me permanently disabled)

Name and Title of Person(s) Responsible: Gabriella Vavrask, HR Generalist

B. Date: _____ Action: _____

2 herniated discs w/ nerve root compression in lower spine + upper spine

Name and Title of Person(s) Responsible _____

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

Company is downsizing and looking to get rid of the higher paid, older secretaries + outsourcing positions. My disability was their excuse for my termination. I was a stellar performer with excellent reviews.

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

Disability papers not completed properly because no return to work date given. This dr. could not treat me + referred me to another dr., so he couldn't give a date. Gabriella Vavrasek - HR Generalist

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|-------------------------|
| A. N/A |  |  |  |
| B. N/A |  |  |  |

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|-------------------------|
| A. N/A | | | |
| B. N/A | | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|-------------------------|
| A. N/A | | | |
| B. N/A | | | |

Answer questions 9-12 **only** if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one **disability**. Please add additional pages if needed.

9. **Please check all that apply:**
   - ☒ Yes, I have a disability
   - ☐ I do not have a disability now but I did have one
   - ☐ No disability but the organization treats me as if I am disabled

10. **What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

2 herniated discs + lower + upper spine with nerve root compression, spinal stenosis. I have difficulty standing, walking, sitting + sleeping. Walk with cane.

11. **Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
   ☒ Yes ☐ No

If "Yes," what medication, medical equipment or other assistance do you use?

Diazepam for sleep, hydrocodone for pain, lidocaine patches for pain, cane for walking

12. **Did you ask your employer for any changes or assistance to do your job because of your disability?**
   ☐ Yes ☒ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

How did your employer respond to your request? _____

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. N/A | | | |
| B. | | | |

14. Have you filed a charge previously on this matter with the EEOC or another agency?  ☐ Yes  ☒ No

15. If you filed a complaint with another agency, provide the name of agency and the date of filing: N/A

16. Have you sought help about this situation from a union, an attorney, or any other source?  ☒ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Contacted 2 attorneys for consultation, no results

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

BOX 1  ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

BOX 2  ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____
Signature

2/19/15
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)

3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

Please answer each of the next three questions.    i. Are you Hispanic or Latino?   ☐ Yes  ☒ No

ii. What is your Race?   Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _Italy + Germany_

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: _Victor Kella_                                    Relationship: _Spouse_

Address: _2775 SW 89th Pl_   City: _Ocala_          State: _FL_  Zip Code: _34476_

Home Phone: (___) _N/A_               Other Phone: (_727_) _846 - 3240_

2.  I believe that I was discriminated against by the following organization(s):  (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked.  If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: _Cleary, Gottlieb, Steen + Hamilton, LLP_

Address: _One Liberty Plaza_          County: _New York_

City: _New York_       State: _NY_ Zip: _10006_   Phone: (_212_) _225-2000_

Type of Business: _Law Firm_    Job Location if different from Org. Address: _N/A_

Human Resources Director or Owner Name: _Danielle Coppola_          Phone: (_212_) _225-3140_

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15    ☐ 15 – 100    ☐ 101 – 200    ☐ 201 – 500   ☒ More than 500

3.  Your Employment Data (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☐ No

Date Hired: _9/29/03_       Job Title At Hire: _Legal Secretary_

Pay Rate When Hired: _$65,000/yr_    Last or Current Pay Rate: _$78,700_

Job Title at Time of Alleged Discrimination: _Legal Secretary_ Date Quit/Discharged: _5/1/14_

Name and Title of Immediate Supervisor: _____

TRANSMISSION VERIFICATION REPORT

|  |  |
|---|---|
| DATE,TIME | 02/19 16:51 |
| FAX NO./NAME | 12123363790 |
| DURATION | 00:02:54 |
| PAGE(S) | 04 |
| RESULT | OK |
| MODE | STANDARD |
|  | ECM |

TIME : 02/19/2015 16:54
NAME :
FAX :
TEL :
SER.# : BROH2J392885

# Office DEPOT
# OfficeMax

OFFICE DEPOT STORE# 306
9474 U.S. Highway 19
Port Richey, FL 34668
(727) 841-8400
02/19/2015    14.5.3              3:55 PM
STR 306   REG4   TRN  6900 EMP 457318
-------------------------------------------
SALE
Product ID    Description      Total
833081   FAXSENDLD              1.99 SS
833091   FAXSENDLDEAADD
   2 @ 1.79                     3.58
            **You Pay**         **3.58**SS

         Subtotal:             5.57
Sales Tax                      0.14
FL State Telecom Tax  9.17%     0.51
            Total:             6.22
   MasterCard 7014             6.22
**********************************************

   Shop online at www.officedepot.com

**********************************************
### WE WANT TO HEAR FROM YOU!

Participate in our online customer survey
and receive a coupon for $10 off your
next qualifying purchase of $50 or more on
   office supplies, furniture and more
(Excludes Technology. Limit 1 coupon per
         household/business.)

Visit www.officedepot.com/feedback
   and enter the survey code below

         Survey Code:
      **Y48W 4AMF KXMN**

*******************************************


22VTYAAPAU345BW88

**Now one company. Now great savings.**
Office Depot, Inc., including its
subsidiary OfficeMax Incorporated

Case 1:16-cv-02982-CM Document 26 Filed 04/20/16 Page 20 of 45

*Exhibit C1*

MENU


**Borgota Retains The Right To Mistreat Their Sex Objects**


**Non-Sequiturs: 09.18.15**


**Movin' Out: Top 5 Relocation Destinations For New York Attorneys**



BIGLAW, LAYOFFS, MUSICAL CHAIRS, PARTNER ISSUES, STAFF LAYOFFS, TAX LAW

# A Mysterious Partner Departure — Plus Stealth Layoffs? — at Cleary Gottlieb

By DAVID LAT

💬 13 Comments / ➦ 30 Shares / May 6, 2013 at 2:12 PM

A Cleary tipster told us:

> **"** For about a year now, Cleary has been laying off staff. I estimate about 30-40 so far. They are doing it one or two people at a time. They have reduced staff through attrition for several years, but now they are just letting people go. They are reassigning, changing schedules, and otherwise driving staff nuts.
>
> I understand that law firms don't exist to provide a "jobs program," as you recently wrote. On the other hand, it isn't right that people are getting written up after years of employment and then being fired "for cause."

Case 1:16-cv-02982-CM   Document 2   Filed 04/20/16   Page 21 of 45

~~I agree~~ completely with this source. It's understandable that firms want to reduce the number of secretaries and other staffers they have, in this increasingly automated age. The classy way to achieve that goal is through "voluntary separation" or buyout programs, conducted openly, and open to all personnel who satisfy certain objective criteria.

The not-so-classy way to do that is through stealth layoffs, i.e., firing perfectly capable employees on "performance" grounds. Stealth layoffs have at least two drawbacks compared to voluntary programs: (1) layoffs will affect some employees who are least able to sustain unemployment (unlike voluntary programs, where employees self-select), and (2) layoffs make it harder for affected employees to find new employment, since they were terminated "for cause."

Which departments are being affected by the Cleary cuts? Here's what we've heard:

> **"** [T]he departments getting hammered are billing, finance and IT. I've spoken to people there and they are literally exhausted. Secretaries have been told their attorney ratio is now 7:1. We haven't had Staff Appreciation Day in the New York office for two years now and they even stopped the weekly delivery of flowers for the 11 reception desks two weeks ago.

And where does the responsibility lie? A source offered these opinions:

> **"** This started about a couple of years ago, when Sheldon Alster became the Managing Partner for the New York office. He is a miserable person and he brought in one Kelly Stevens as Administrator. They have really been busting chops. They even took five sick days away from staff this year from the ten [previously given].
>
> In Cleary's defense, I have to say it has been a good firm in the past.... Now they're acting like the firm is in a death spiral. I don't understand this with PPP of $2.6 million.

Actually, it's closer to $2.7 million, but who's counting?

We reached out to Cleary for comment on the staff layoff claims. The firm responded by saying that it does not comment on staff departures.

So what does this all mean? The times, they are a-changin'. The firms that used to be known as kinder, gentler Biglaw firms, like Cleary and Debevoise, are increasingly focused on the bottom line. Debevoise ditched its trusts and estates practice, essentially because T&E wasn't paying its own freight. And now Cleary is clearing out unneeded support staff, for basically the same reasons.

Cleary may be boring. But boring and well-fed is preferable to the exciting life of the unemployed.

**Earlier:** The 2013 Am Law 100: A Year of 'Slow Growth'
Nationwide Layoff Watch: Voluntary Separations at Two Major Law Firms

« PREVIOUS    1  **2**

**TOPICS**

Biglaw, Cleary Gottlieb, Cleary Gottlieb Steen & Hamilton, Farewell, Goodbye, Kelly Stevens, Kris Hess, Kristofer Hess, Kristofer W. Hess, Layoffs, Musical Chairs, Mysterious Departures, Mystery Departures, Partner Issues, Sheldon Alster, Sheldon H. Alster, Staff Layoffs, Stealth Layoffs, Support Staff, Tax, Tax Law, Taxes, Yaron Reich, Yaron Z. Reich

ATL LAW FIRM DIRECTORY

## Cleary Gottlieb Steen & Hamilton    More stats and coverage

CLEARY
GOTTLIEB

INSIDER RATING

# B

Exhibit C2

See all Photos

**Work in HR or Recruiting?**
Get your free employer account

**Cleary Gottlieb**
www.cgsh.com

| 81 | 223 | 30 |
|---|---|---|
| Reviews | Salaries | Interviews |

There are newer employer reviews for Cleary Gottlieb     **See Most Recent**

Jun 9, 2013                                                                 Helpful (2)

### "worst place I've ever worked"

Former Employee - Anonymous Employee

Doesn't Recommend          CEO

I worked at Cleary Gottlieb full-time

**Pros**
none I can think of - many long term employees there stated the company is no longer what it used to be - they are disappointed at the changes

**Cons**
management only cares about profit for partners- it's ok if the company truly values the employees and rewards them with what they deserve - unfortunately this is not the case. micro management, high turnover rate, hiring junior level people to do senior level work, constant restructuring to get rid of competent employees to cut cost, depressed employees and low morale

**Advice to Management**
advice - what advice - they will listen? i doubt it.

Helpful (2)

## Other Employee Reviews for Cleary Gottlieb

May 22, 2013                                                                Helpful (6)

### "Stay away from this company if you are not a lawyer"

Former Employee - Anonymous Employee

Doesn't Recommend          CEO

**Pros**
some nice coworkers to make days easier to get through

**Cons**
No appreciation to staff (non-lawyers) for their hard work. Management has double standards for themselves and towards employees. Very unhealthy working environment that micromanages employees with no room for growth. Long hours are expected with manipulation to take away overtime pay. They over sell the positions during hiring.

**Advice to Management**
an overhaul of the management in certain departments

Helpful (6)

### Jobs You May Like


Legal Secretary
AeroVironment– Simi Valley, CA


Legal Secretary II
Farmers Insurance Group– Atlanta, GA

Assistant/Legal Secretary (Litigation)
O'Melveny & Myers LLP– Newport Beach, CA


Legal Practice Assistant (Legal Secretary)
King & Spalding– Atlanta, GA


Legal Secretary
State Farm– Saint Petersburg, FL

Legal Real Estate Secretary
Bryan J. Stanley, P.A.– Clearwater, FL

Legal Secretary, Litigation
Orrick– San Francisco, CA

Legal Assistant/Legal Secretary
All Legal Staff, Inc– Tampa, FL

Administrative/Legal Secretary
Hood Legal Search, LLC– Tampa, FL

Paralegal/Legal Secretary/Legal Assistant
The Legal Registry– Tampa, FL

Work in HR or Recruiting?

Jun 10, 2013                                                                                                Helpful (3)

### "Happy enough until change of management and mass layoffs "

<span>&#9660;</span>   Current Employee - Anonymous Employee in New York, NY

Doesn't Recommend                          Negative Outlook                          CEO

I have been working at Cleary Gottlieb full-time

**Pros**
Pretty good compensation and good benefits.

**Cons**
Unstable. Layoffs despite what they say. Many admin staff are very unmotivated, bored and boring.

Case 1:16-cv-02982-CM    Document 2    Filed 04/20/16    Page 25 of 45

*Exhibit C3*



MENU



**Borgota Retains The Right To Mistreat Their Sex Objects**



**Non-Sequiturs: 09.18.15**



**Movin' Out: Top 5 Relocation Destinations For New York Attorneys**





BIGLAW, EMAIL SCANDALS, LAYOFFS, PARTNER ISSUES, STAFF LAYOFFS, TECHNOLOGY

# Summer Drama At Cleary Gottlieb

By DAVID LAT

💬 44 Comments / ↱ 59 Shares / Aug 7, 2013 at 12:04 PM



Case 1:16-cv-02982-CM    Document 2    Filed 04/20/16    Page 26 of 45

*One Liberty Plaza: a tower of dark secrets?*

**MENU**

It's official: Cleary Gottlieb is no longer boring. The elite and esteemed firm is now exciting as well.

In the past few months, Cleary has generated enough drama to fuel a law firm soap opera — think "All My Associates" or "The Biglaw and the Beautiful" (on second thought, save the latter title for Davis Polk). Cleary has witnessed a mysterious partner departure, support staff vanishing into the ether, and a summer associate dismissed due to his disturbing past.

Yesterday, the drama at One Liberty Plaza continued. A terminated employee rose from the cyber-grave to haunt the living — before he was electronically exorcised by the powers-that-be....

At around 9 a.m. on Tuesday, everyone at Cleary Gottlieb received a lengthy email from an individual we'll call "HR" (his initials) or "Angry IT Guy." In his email, totaling about four single-spaced pages, HR claimed he was wrongfully terminated, defended his job performance, and called into question the qualifications and competence of his former supervisors and colleagues. He also offered some thoughts on the stealth layoffs of support staff at Cleary, as well as what he called the "bully[ing]" of staff at the firm.

It seems that the higher-ups at Cleary weren't fans of Angry IT Guy's after-the-fact departure memo. Shortly after it was sent, Cleary's IT department magically deleted it from everyone's inboxes, including any replies and forwards. "Feels kind of big brothery," said one of our sources.



Furthermore, any message mentioning Angry IT Guy by name got automatically bounced back to the sender, instead of transmitted to the recipient. When we emailed Cleary yesterday for possible comment, our message, which mentioned HR by name, got bounced

~~back~~ to us with this explanation: "This message violates our email policy." When we resent ~~MENU~~ ~~our~~ message after replacing HR's full name with his initials, our message went through.

(Cleary declined to discuss Angry IT Guy, explaining that "[a]s a policy, we do not comment on personnel matters." We also emailed Angry IT Guy, but he did not get back to us.)

**UPDATE** (8/9/2013, 9:30 a.m.): After the firm made the message from Angry IT Guy disappear, Sheldon Alster, whose reign as New York managing partner we have discussed before, sent out this email:

> **"**  We are aware that many of you received an email this morning from a former employee, conveying his perceptions on a variety of subjects relating to his employment by the Firm. It is not appropriate for us to provide a substantive response to that email, but we do wish to assure you that, in all circumstances – including with respect to this employee – the Firm takes very seriously its obligation to treat its employees fairly and respectfully, and to follow the Firm's written policies and procedures in matters of this kind.
>
> Please do not hesitate to contact me or [Administrator] Kelly Stevens if you have any questions or concerns.

What do we know about HR aka Angry IT Guy? Not a huge amount. One of our tipsters told us that he was a network engineer at the firm who was fired a few months ago and was "freaking pissed" about it. This source described HR as "a nice guy generally, a little full of himself."

That sounds about right, at least based on his ex post facto departure memo (reprinted in full on the next page, with initials in place of names). The email goes on at great length about HR's technological knowledge and prowess and describes a number of situations in which HR warned about a problem and was subsequently vindicated. Most of the message amounts to IT inside baseball, but a few sections address broader issues at Cleary.

We've previously discussed staff being treated less pleasantly at Cleary, perhaps in an effort to encourage attrition. Angry IT Guy claims to have suffered such treatment:

> They attempted to make me quit by stripping me of my responsibilities and isolating me from my tasks in hoping that I would become bored and quit. Unfortunately for them, none of these tactics worked. As to my understanding of the Cleary policies, this should have been deemed a form of harassment. I complained and was told that it was not....
>
> I was forced by KB to work outrageously long hours and when I complained to Human Resources, I was told by KB and DH that because I was an exempt employee, I was to work until the job was finished and I was at the firm's disposal at ANY given time and there was nothing I could do about it.

Sounds like par for the Biglaw course. It's worth noting, however, that there's a fair amount of litigation breaking out these days over whether certain employees are being misclassified as exempt from wage and hour laws. Angry IT Guy might want to consult with an employment lawyer.

We've written before about stealth layoffs of staff at Cleary in the past year or so. Angry IT Guy claims that there were such layoffs in the IT department in May 2012. He also alleges that the reductions have targeted older employees and minority employees:

> Within the past year and a half, Cleary has eliminated staff over 40 without cause. They have used the excuse of retirement, reduction in staff or any other potentially acceptable reason. The truth is, that the largest percentage of these people were over 40 and 50 years of age, were people of color and supposedly did not fit the new Cleary image. Simply ask around and look at the person that you are aware of that has been released from their role at Cleary. The sorry fact is that the process is not over.

He suggests that age and race might have played a role in his own termination:

> Giving everyone involved the benefit of the doubt; I still cannot understand the reason for my termination. When did they decide to outsource me?

Was it before I challenged KB's lack of technical ability? Was it before I challenged the poor design decisions that were costing the firm lots of money because of downtime? Or was it because I was more qualified than KB or ML but I was black and over 40? Yes. I said it. In a real world, I would not have been treated the way that I was if I was young and not African American.

(Cleary Gottlieb, consider yourself lucky. Elie Mystal is on vacation this week.)

It seems that Angry IT Guy was willing to pay the price for the ability to speak out:



> I refused the Cleary separation package so that I could not be kept quiet about my experiences and other concerns at Cleary, Gottlieb, Steen and Hamilton. Someone had to be a voice to let the unknowing know what is happening in the company that they dedicate so much of themselves to everyday. I assure you, there is a hidden list of those that are accepted because they are on board with this and those who will be shunned because they refuse to be part of the process.

Cf. Shinyung Oh, the former Paul Hastings associate who wrote in her famous departure memo, "As for your request for a release, non-disclosure, and non-disparagement agreement in return for three months' pay, I reject it. Unlike you, I am not just a paid mouthpiece with no independent judgment. I will decide how and to whom to communicate how you have treated me."

At the same time, even while decrying the "bully[ing]" of staff, Angry IT Guy denies any sort of vendetta against Cleary:

> [I]n closing, do not let these people bully you. They will only get away with it if you let them. I do not intend to let that happen.

I'd also like to add that I am not disgruntled nor am I trying to get back at Cleary or any of its staff because I know longer work there. I just need for everyone to know what has happened and what will continue to happen if no one says or does anything about it.

That's the tale of Angry IT Guy. He might be an outlier in his willingness to speak out about goings-on at Cleary, but he's not alone in having grievances with the firm. Here's what a tipster told us about the state of staff at CGSH:

> They are really treating us like s**t. Probably attempting to get us to quit. Things like changing schedules, denying us vacation time when we want/need it, nitpicking.
>
> I don't feel I'm being disloyal at all. They deserve to have their vain butts exposed. I really believe the previous ATL articles have slowed things down sharply, termination-wise.

Terminations might have slowed for the time being, but are they over? Some sources think not. Here are some collected comments:

> "The tension at Cleary is intense. Some are petrified they are going to lose their jobs, others are like, f**k it bring it on already.... [T]he associates are worried now. It is really bizarre."
>
> "Word Processing and Duplicating have been told there is no overtime whatsoever, even if the work cannot get done. It has to be left for the next day. And no temps. Getting the work done promptly has always been the mantra at Cleary since I started working here."
>
> "Cleary rented two floors at 22 Cortlandt Street about 7 or 8 years ago. They put IT, Billing, Accounting, Records, and Payroll over there. These departments are now being moved back to One Liberty Plaza, but their previous space from years ago has been converted into attorney offices and conference rooms. Some people in WP think their department will be be outsourced; some people in the Library think their department will be eliminated. The move is supposed to occur in September or October."

Summing up the situation, one tipster told us, "It's a shame because Cleary was always good to us. The new partners in charge really suck. They just aren't honest with us."

We'll continue to monitor the situation at One Liberty Plaza. If you have information or opinions to share with us, whether critical or complimentary of Cleary, please feel free to email us or to text us (646-820-8477). Thanks.

*(Flip to the next page to read Angry IT Guy's email message in all its glory.)*

**1** 2    NEXT »

**TOPICS**

Biglaw, Cleary Gottlieb, Cleary Gottlieb Steen & Hamilton, Email, Email Scandals, Emails, Information Technology, Layoffs, Partner Issues, Sheldon Alster, Sheldon H. Alster, Staff Layoffs, Stealth Layoffs, Technology

ATL LAW FIRM DIRECTORY

# Cleary Gottlieb Steen & Hamilton   More stats and coverage



CLEARY
GOTTLIEB

INSIDER RATING

# B

INDUSTRY REPUTATION

# A

TOP PRACTICE BY HEADCOUNT
## Corporate **48%**



MENU



**Borgota Retains The Right To Mistreat Their Sex Objects**



**Non-Sequiturs: 09.18.15**



**Movin' Out: Top 5 Relocation Destinations For New York Attorneys**



BIGLAW, EMAIL SCANDALS, LAYOFFS, PARTNER ISSUES, STAFF LAYOFFS, TECHNOLOGY

# Summer Drama At Cleary Gottlieb

By DAVID LAT

💬 44 Comments / ➤ 59 Shares / Aug 7, 2013 at 12:04 PM

<u>CLEARY GOTTLIEB STEEN & HAMILTON — FIRM-WIDE EMAIL FROM ANGRY IT GUY</u>

From: [Angry IT Guy]@aol.com
To: [Everyone at Cleary Gottlieb]
Sent: Tuesday, August 06, 2013 09:01 AM
Subject: Goodbye CGSH from [HR aka Angry IT Guy]

Hello CGSH;

Many of you are probably wondering why you are receiving this e-mail. Well, after great thought and determination, I felt that it was time to explain why I am no longer employed by CGSH.

For those of you who know me, you know that I am not afraid to tell it like it is no matter what the consequences may be. I give praise where praise is due, and when I see an area that I think needs improvement, I do not hesitate to let it be known as long as the criticism is productive and not impeaching. It is for these reasons that I find it necessary to speak on behalf of myself and those who are afraid to speak up.

On May 16th 2013, I was brought into [Chief Information Officer] ML's office, as they secretly assembled my co-workers in the conference room, and was told that my position was outsourced effective immediately. I was not shocked, as ML and KB (Pseudo Manager) has been trying to get rid of me since ML arrived at Cleary, but they had no grounds in which to terminate me. They attempted to make me quit by stripping me of my responsibilities and isolating me from my tasks in hoping that I would become bored and quit. Unfortunately for them, none of these tactics worked. As to my understanding of the Cleary policies, this should have been deemed a form of harassment. I complained and was told that it was not. Don't even want to say which partner that was. I was yelled at by ML on two separate occasions (one conversation was recorded). I was harassed by KB via e-mails (those were retained). I was forced by KB to work outrageously long hours and when I complained to Human Resources, I was told by KB and DH that because I was an exempt employee, I was to work until the job was finished and I was at the firm's disposal at ANY given time and there was nothing I could do about it. In addition, I reached out to Human Resources on three different occasions to discuss the unfair treatment by KB and ML. I was told during one HR encounter that there would be no repercussion for me bringing these complaints to their attention. Little did I know how wrong that would be (All of these conversations were recorded as well).

Here is a synopsis of the events which occurred between Cleary IT and me.

1. I was hired in 5/2010 as the Sr. Engineer/Architect to address many of the issues which existed in the network and to design the new data center infrastructures moving forward. I was able to fine tune many of the data and voice (IP based) network issues in the Americas environment.

2. Built multiple vendor networks inside of the Cleary network to support the on-site vendors including, but not limited to, Travel and Flik.

3. Re-designed and implemented the Cleary Telepresence and video subnets.

Case 1:16-cv-02982-CM   Document 2   Filed 04/20/16   Page 34 of 45

4. Designed and implemented the conference room infrastructure network.

5. Designed and proposed the new data center Infrastructure.

6. Reluctantly led the connectivity design of the under developed WAN site connectivity for the new world data center.

7. Supported the Cleary network infrastructure globally.

Background experience:

More than 30 years of experience in network communications design and support.
BS CSEE in Network Design

Multiple Cisco, Nortel and Enterasys network Certifications

Design and implementation of multi-tiered, higly redundant data centers for government, financial, pharmaceutical, power and industry and cellular service providers.

Now let's get down to the grit of my situation at Cleary Gottlieb.

During the reign of JW, KB (current manager), was a consultant under SS. KB's position, off and on for nine years, was to hand out PCs and Blackberry devices during the rollouts. For all of this time, KB had no network or technical experience. Upon the completion of the rollouts, KB was without a job. He reached out to JW (his personal friend) who offered him a position in the network group handling administrative tasks and paperwork. This occurred in the 1st quarter of 2011.

During the month of November 2011, the former network manager, JW announced that he was leaving the firm. At this time, the network group was left without any manager. This was the case for more than six months.

On January 5th, 2012, a new CIO was hired, ML. ML immediately established a relationship with the Security Engineer and KB. He spent much of his time with them both in and out of the office and they became drinking buddies going out every Thursday after work. During this time, without any reason or notification to me, my previously assigned

project of developing the data centers were stripped from me and handed to KB, someone

~~MENU~~

with NO data center experience.

When I reached out to Human Resources to question this, and I was given the excuse that as per ML, they needed to stretch the workload. That was non-sense and a lie. The firm would soon come to realize how bad an idea that decision was.

During the month of May 2012, there were several layoffs in the IT department. ML announced that there would be no additional layoffs and he also announced that the network manager's position was open for application. He urged internal people to apply. This was seen as the beginning of a ploy to cover an already hidden decision to hire KB into this role. Everyone somehow felt that I would have received this position based on my knowledge and many years of experience. I responded with doubt to them. The writing was already on the wall. Not long after the application process was begun, I was made aware by others that the position had been filled and this was prior to any notification from ML After confirmation of this information, I cleaned out my desk in preparation to quit. For a timeline reference, this occurred more than a full week prior to ML informing me that I had not received the position. I asked ML that afternoon if there was a decision made for the management position. He looked me in the eye and said "No, this is a long process and they are still reviewing other candidates." Little did he realize that I already knew that KB was offered the job. That's why I cleaned out my desk .The stage is now set for the spiraling downfall of the CGSH corporate network environment.

As the Sr. Network Engineer and Architect for the firm, I or someone else with the proper experience, should have been involved in the data center builds. I was the only one in the firm that had the experience and technology needed to perform e required tasks. No one else at Cleary had ever done this before. However, I was not allowed to be involved until the shit hit the fan. Even then, I was limited to support access.

On September 10th, ML and KB hired AH, another engineer. The story was that he was being hired as my backup. AH was a good engineer but there were Cleary institutional barriers which interfered with him making the best decisions for the firm's network. AH worked at Cleary for six months and then quit. He made it clear that he could not deal with the poor management and lack of technical ability and experience in KB. So he put in his

~~two~~ weeks' notice and quit. In his exit, KB even tried to get him to say that I was part of the ~~MENU~~ reason that he was leaving.

Through KB's leadership, there have been several outages caused by his poor decision making and leadership. Much of which I am positive was at the direction of ML. Here are a few examples:

In June/July 2012, there was one active circuit between Sao Paulo and the WAN. There was a second circuit between Sao Paulo and Buenos Aires which was setup as a backup but was not carrying traffic. During a conference call with the project manager, ML, KB and PZ, we discussed the additional circuit in Sao Paulo. I suggested that we enable the second circuit as a backup. We are already paying for it. ML screamed at me on the call (witnessed by everyone) not to touch that circuit. This was totally uncalled for. This incident occurred on a Monday. On Tuesday, I was in his office to discuss the circuit with PZ on the phone. Once again, I asked ML to implement the circuit and he said no. Well, the next day I was on the bus on my way to work. The primary circuit in Sao Paulo failed and there was no secondary circuit so the Sao Paulo office had no connectivity to any other office. I was not able to do anything but coordinate with PZ to contact the carrier. The Sao Paulo network was down for hours. I was basking in this situation for days. At this point, probably under the direction of Kelly Stevens, ML decided that I should activate the second circuit in Sao Paulo.

KB and PZ were responsible for the development of the WAN links to each site for the new data connectivity. Once again, I was kept out of the design decisions. The Buenos Aires office has two physical locations. Based on the WAN design, each site (location) was to have two circuits for redundancy. As we were preparing the BA site for circuit install, I discovered that KB/PZ did not allocate dual circuits for the two locations in BA. In addition, I recommended a routing solution between the two sites as long as the prerequisites existed. The first was that there needed to be a routing protocol running on the BA office switch. There was none. The second was that the switch be able to support the routing protocol. It couldn't. And the third was that nothing in the site would break because of this oversight by KB. It did. I instructed KB to purchase a new switch for Buenos Aires because the current switch would not support their needs for this WAN upgrade. KB decided against my technical direction, to attempt to upgrade the switch and

Case 1:16-cv-02982-CM   Document 2   Filed 04/20/16   Page 37 of 45

it broke the routing and voice in Buenos Aires. More so, Cisco also advised against the
MENU
upgrade.

I informed KB and PZ (Manager of Europe Technical Services) that there needed to be a
design discussion around the site equipment in preparation for building the new data
center connections to each office. The response I received was that this was not needed
and there was no time for it. That said, in February 2013, the core switch in DC failed. Not
once or even twice, but three times. This failure was due to the inability of the switch to
handle all of the additional routes which were being sent to it. I warned the management
that this would happen but was told that we would move on. This outage cost the firm
several hours in down time and money. There were excuses given by KB and ML but the
excuses were lies. They blamed it on the equipment but the equipment had been up and
functioned more than 12 years without incident. The switch only failed when KB and ML
refused to accept my advice in the development of these sites.

During my last week at Cleary, there were several outages in the network because KB and
ML continued to delegate my roles and responsibilities to others. Not sure of the reason,
on May 16th, I sent a meeting request to KB and ML questioning these changes. ML stated
that he was busy but may be available later and wanted to know the details of the request.
I explained to him my concern about my responsibilities. That afternoon between 2 and
2:30, he sent an email asking if I was available at 4:00 PM. I responded "yes". He came to
my desk and got me and walked me to his office where HR was waiting in informed me of
my immediate termination.

Giving everyone involved the benefit of the doubt; I still cannot understand the reason for
my termination. When did they decide to outsource me? Was it before I challenged KB's
lack of technical ability? Was it before I challenged the poor design decisions that were
costing the firm lots of money because of downtime? Or was it because I was more
qualified than KB or ML but I was black and over 40? Yes. I said it. In a real world, I would
not have been treated the way that I was if I was young and not African American.

I exceeded all employee and technical expectations that my position would have required.
I had an excellent attendance record and was always the one who was available to work
long hours, weekends, holidays, vacation days and sick days. I would sacrifice life, family
and safety to make sure that the Cleary network remained up and running. I have also

never been written up for performance or job related incidents. There are additional mass ~~MENU~~ failures and outages which still continue to this day. So I am not sure of how my being outsourced benefitted anything other than Cleary having an excuse to get rid of me.

Within the past year and a half, Cleary has eliminated staff over 40 without cause. They have used the excuse of retirement, reduction in staff or any other potentially acceptable reason. The truth is, that the largest percentage of these people were over 40 and 50 years of age, were people of color and supposedly did not fit the new Cleary image. Simply ask around and look at the person that you are aware of that has been released from their role at Cleary. The sorry fact is that the process is not over.

As for technical abilities, KB has none. The data center installations are a failure although ML is doing his best to cover that. The core switch replacements in NY and DC are not going well at all and all of these outages are costing the firm severely. The South American sites are still in limbo as their network issues although defined, are not being addressed and everyone in IT is being told not to question these issues just deal with them. It would be in the firms best interest to investigate these statements and make determinations to protect its interests and clients.

On a closing note, I would also add that I refused the Cleary separation package so that I could not be kept quiet about my experiences and other concerns at Cleary, Gottlieb, Steen and Hamilton. Someone had to be a voice to let the unknowing know what is happening in the company that they dedicate so much of themselves to everyday. I assure you, there is a hidden list of those that are accepted because they are on board with this and those who will be shunned because they refuse to be part of the process.

It is my intention to also meet with many of the Cleary clients, which were also my business clients, and discuss the lack of human rights fundamental as well as technical fundamentals which Cleary is lacking. I have recorded all of the conversations with ML, KB, and Human Resources depicting the abuse of power and decision and supporting the fact that I properly reached out to them when there was a concern and there was no apparent action taken other than to relieve me of my position.

I feel that I was unjustly persecuted for my determination not to follow the two idiots that are running the Americas IT department. That quickly placed me into the pool of people that the firm need to get rid of. To add to this list was MW, CB, J from Desktop Support,

and several other IT staff members globally. I was not even given an exit interview upon
my dismissal. I am sure that this is not firm policy as I know it. If I was terminated without
malice, why was I not afforded the same luxuries as those who resign. Hmmmm!?!

And in closing, do not let these people bully you. They will only get away with it if you let
them. I do not intend to let that happen. I'd also like to add that I am not disgruntled nor
am I trying to get back at Cleary or any of its staff because I know longer work there. I just
need for everyone to know what has happened and what will continue to happen if no one
says or does anything about it.

For all others, I wish you the best. It was a pleasure working with and supporting you for
the three years that I work at Cleary and you were the only reason that leaving the firm
was hard. You made my 2.5 hour commute (each way) worth every bit of it. Feel free to
email me or contact me if you please.

Best regards,
[HR aka Angry IT Guy]

**Earlier:** A Mysterious Partner Departure — Plus Stealth Layoffs? — at Cleary Gottlieb
Top Law Firm Fires Summer Associate After Learning Of His Criminal Past
Breaking: A Dramatic Farewell Email (And proof of Paul Hastings layoffs.)

« PREVIOUS    1  **2**

**TOPICS**

Biglaw, Cleary Gottlieb, Cleary Gottlieb Steen & Hamilton, Email, Email Scandals, Emails, Information Technology, Layoffs,
Partner Issues, Sheldon Alster, Sheldon H. Alster, Staff Layoffs, Stealth Layoffs, Technology

ATL LAW FIRM DIRECTORY

# Cleary Gottlieb Steen & Hamilton   More stats and coverage

Case 1:16-cv-02982-CM   Document 28   Filed 04/20/16    Page 40 of 45

*Exhibit C4*

MENU



**Borgata Retains The Right To Mistreat Their Sex Objects**



**Non-Sequiturs: 09.18.15**



**Movin' Out: Top 5 Relocation Destinations For New York Attorneys**



BIGLAW, LAYOFFS, OUTSOURCING, STAFF LAYOFFS, TECHNOLOGY

# Nationwide Layoff Watch: The Upside Of Outsourcing?

By DAVID LAT

💬 59 Comments / ↱ 29 Shares / Feb 20, 2014 at 2:21 PM



When it comes to Biglaw word-processing jobs, Williams Lea is the grim reaper. As we've chronicled in these pages, numerous leading law firms have outsourced their word processing and proofreading functions to this prominent provider.

Case 1:16-cv-02982-CM   Document 2   Filed 04/20/16   Page 41 of 45

This has led to layoffs — lots and lots of layoffs. Some affected employees have been sad,
MENU
and some have been angry. One complained of the "callous disregard for the welfare of long-time Foley [& Lardner] employees" that a Williams Lea takeover displayed.

But could these changes be beneficial — not just for law firm bottom lines, but for the affected individuals? The latest law firm to outsource its WP and proofreading functions, one of the most prestigious and profitable firms in all the land, makes the case....

Earlier this week, Cleary Gottlieb announced that it would be outsourcing its New York word processing department to Williams Lea. We understand that the move affects approximately 50 employees and will take effect in May 2014. Severance is being offered, sources report:

> **"** Everyone in the Department will be given $5,000 and 2 weeks pay for every year of employment up to a maximum of 52 weeks. People were told that they can apply for positions with Williams Lea.... Anyone accepted to work with Williams Lea will not be eligible for the 2 weeks pay for every year of employment, but will receive a flat payment of $10,000.

How are Cleary staffers reacting to news? We heard that some people were upset (e.g., crying), but others appreciated that this move was done openly (since there have been allegations of stealth layoffs of support staff at Cleary in the past).

We reached out to Cleary for comment. The firm provided this statement, through a spokesperson:

> **"** After careful consideration and in an effort to bring enhanced services, greater efficiency and broader expertise to our New York word processing functions, Cleary Gottlieb Steen & Hamilton LLP will transfer the management of those operations to Williams Lea, the well-regarded office services provider, by early May 2014.
>
> The transfer of oversight to a company that specializes in this area will improve our ability to meet the needs of our lawyers and clients, and to ensure that our word

Case 1:16-cv-02982-CM Document 2 Filed 04/20/16

MENU

processing services keep pace with advances in technology. Additionally, Williams Lea can offer a wider array of training and development opportunities for its staff members.

We are providing financial and other forms of support to help make the transition as smooth as possible for the impacted word processing employees who, through their hard work and dedication over many years have made valuable contributions to the Firm:

- *They all will have an opportunity to apply for jobs with Williams Lea, in our New York Office.*
- *Those who stay in their positions through the transition, whether or not they become Williams Lea employees, will receive a retention payment.*
- *Those who accept jobs with Williams Lea also will receive a transition payment.*
- *Those who stay with the Firm through the transition but don't join Williams Lea also will be eligible for a generous severance package and outplacement services.*

To look on the bright side:

- Cleary staffers can apply for jobs that will remain in New York. So this isn't a case where people would have to move far away to keep their jobs. In fact, commutes would remain unchanged, because Williams Lea will be running the operation out of Cleary's offices.
- "Williams Lea can offer a wider array of training and development opportunities for its staff." This is a fair point too. One could argue that law firms should focus on practicing law, and leave support functions like word processing to focused, dedicated providers like Williams Lea.
- Payments are being made to the affected staffers, whether or not they eventually join Williams Lea — which is generous, one could argue, because people who end up working for Williams Lea haven't really "lost" that much in the transition.

If the new positions paid a lot less, that might be a different story. But one source familiar with the situation advises us that current Cleary staffers who join Williams Lea will receive compensation and benefits that are comparable to what they currently get at Cleary.

So, in the end, this doesn't seem that bad. Cleary appears to be handling the situation in an open, transparent manner. Severance or transition payments are being made to affected individuals. And a company with greater expertise in word processing and familiarity with the latest technologies and processes is taking over these operations, which over the long term should (hopefully) result in improved — or at least more cost-effective — service.

At least that's how things look from where we sit. Are we missing something? If so, feel free to opine in the comments, email us, or text us (646-820-8477). Thanks.

**Earlier**: Nationwide Layoff Watch: Outsourcing Claims Additional Law Firm Jobs

**TOPICS**

Biglaw, Cleary Gottlieb, Cleary Gottlieb Steen & Hamilton, Layoffs, Outsourcing, Staff Layoffs, Support Staff, Technology, Williams Lea

**POPULAR ARTICLES**

 As Bar Exam Scores Continue To Plummet, Early Results Reveal Worst Performance

 Movin' Out: Top 5 Relocation Destinations For New York Attorneys

 Law Grad Allegedly Murdered Fellow Classmate In Drug Deal Gone Bad

Exhibit D

# ZWANGER-PESIRI
## RADIOLOGY

Merrick
2012 Sunrise Highway
Merrick, NY 11566
Phone: (516)-868-9300
Fax: (516)-868-9308

:: Marc Agulnick, MD
:: 999 Franklin Avenue, Suite 300
  Garden City, NY 11530

Patient:      Denise Kello
MRN:          2101961
DOB:          08/04/1953
Home Phone: (516)547-7167
Exam Date:    04/18/2014
Exam:         MRI-LUMBAR SPINE W/O CON |
              72148

MRI-LUMBAR SPINE W/O CON

History: Low back pain radiating to the hips and legs.

Technique: Sagittal T1-FLAIR, T2 and STIR images were supplemented by axial proton density images through the disc spaces. This study was performed on a 1.5 Tesla system and interpreted in comparison to plain films dated April 17, 2014.

Findings: Degenerative disc and facet disease is seen throughout the lumbar spine with Grade 1 degenerative spondylolisthesis at L4-5. The vertebral bodies are otherwise in normal alignment the sagittal plane with a mild levoscoliosis.

L2-3: Left-sided disc herniation with mild compression of the left L2 nerve root in the neural foramen.

L3-4: Left sided disc herniation with compression of the left L4 nerve root in the lateral recess and the left L3 nerve root in the neural foramen.

L4-5: Grade 1 degenerative spondylolisthesis, facet osteoarthrosis and buckling of ligamentum flavum with significant central stenosis.

The remaining lumbar and lower thoracic discs are relatively normal. The conus medullaris and nerve roots of the cauda equina are normal. No pathologic marrow infiltration or compression fracture is seen but there is bone marrow edema adjacent to the degenerated L2-3 disc. Bone marrow edema is also seen within the L3 and L4 spinous processes.

The paraspinal soft tissues are normal.

Advanced bilateral facet osteoarthrosis is seen at L4-5 and to lesser extent L5-S1. The remaining facet joints are relatively normal.

IMPRESSION:

Multilevel lumbar degenerative disc and facet disease with Grade 1 spondylolisthesis at L4-5.

Disc herniation at L2-3 with mild compression of the left L2 nerve root.

Disc herniation at L3-4 with compression of the left L3 and L4 nerve roots.

Grade 1 degenerative spondylolisthesis at L4-5 with significant central stenosis.

David Panasci M.D., Ext. 4607
04/18/2014